***********
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, REVERSES the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case and the parties are properly before the Commission. *Page 2 
2. An employer-employee relationship existed between the parties at all relevant times. Defendant Caromont Health is a duly qualified self-insurer under the North Carolina Workers' Compensation Act with Key Risk Services, Inc. as their third party administrator.
3. On January 15, 2008, plaintiff alleges she sustained an injury by accident and her average weekly wage on that date was $442.64.
4. The parties entered into a Mediated Settlement Agreement on September 18, 2008, signed by all the parties and their respective counsel of record at the time.
 *********** EXHIBITS
1. The parties stipulate to the following documentary evidence:
 a. Stipulated Exhibit Number 1: Documents including a Mediated Settlement Agreement, Final Compromise Settlement Agreement and Release, medical records, employment file and Industrial Commission forms and documents.
 b. Stipulated Exhibit Number 2: Medical exhibits requested to be introduced into the record by plaintiff.
 *********** ISSUE
The issue to be determined is whether the Mediated Settlement Agreement entered into by the parties at mediation on September 18, 2008 is enforceable and whether the subsequent Final Compromise Settlement Agreement and Release is fair and just and in the best interests of all parties and should be approved.
 ***********
Based upon all of the competent evidence adduced from the record and the reasonable *Page 3 
inferences therefrom, the Full Commission makes the following:
 *********** FINDINGS OF FACT
1. Plaintiff alleges that on January 15, 2008 she injured her back while working for defendant-employer as a Certified Nursing Assistant (CNA). Plaintiff reported to defendant-employer that she injured her back while turning a patient in a hospital bed. Defendant-employer completed a Form 19 report of injury on January 21. 2008 stating that plaintiff sustained an injury to her back, describing how the injury occurred, and indicating when disability began.
2. Following her injury plaintiff continued to work under light duty restrictions assigned to her by her doctor until she was taken out of work by her doctor on June 16, 2008. Defendant did not begin paying temporary total disability compensation to plaintiff when she became unable to work.
3. Plaintiff filed a Form 18 notice of accident and claim for benefits on May 21, 2008. On July 16, 2008 plaintiff filed a Form 33 request for hearing.
4. The transcript of this proceeding contains a Form 61 completed by defendant on July 23, 2008 denying plaintiff's claim, stating that plaintiff's current condition is not related to her workers' compensation incident of January 15, 2008. This Form 61 has no name or signature of anyone, does not have an I.C. file number and does not show any indication of having been filed at the Industrial Commission. The parties, however, treated this case as a denied claim.
5. Plaintiff was released to return to work on August 11, 2008 with restrictions of no lifting or pushing over 20 pounds, sitting up to 1 hour, standing up to1 hour and to change positions every hour. Defendant-employer could not accommodate plaintiff's restrictions so plaintiff was not permitted to return to work. *Page 4 
6. A mediation settlement conference was held on September 18, 2008. As of the date of the mediation conference plaintiff was still out of work and had not been able to perform her regular work duties as a CNA since the time of her injury. She was still undergoing physical therapy for her back and she was still complaining of back pain radiating to her lower extremities for which she was continuing to receive regular treatment.
7. During the course of the mediation, as part of a settlement offer defendant offered to accept plaintiff's claim as compensable and have her return to a light duty job or pay her a lump sum settlement and require her to resign and release all employment rights. Plaintiff agreed to accept a lump sum settlement offer. Based upon her testimony, plaintiff was convinced that defendant-employer wanted her to resign.
8. The parties entered into a Mediated Settlement Agreement, which was signed by all parties. Plaintiff was represented by an attorney at this mediation.
9. In this Mediated Settlement Agreement, defendant agreed to pay $20,000.00 to plaintiff. In consideration for the payment of $20,000.00 plaintiff agreed to execute a standard compromise settlement agreement that complied with N.C. Gen. Stat. § 97-17. The compromise settlement agreement was to be prepared by defendant and submitted by the parties to the Industrial Commission in the time prescribed by the Commission. Defendant agreed to pay the mediation costs and plaintiff (employee) agreed to pay all of her medical expenses. In item number 8 of the Mediated Settlement Agreement, beside the word "Other" the following was handwritten: "E- (Employee-plaintiff) will resign and execute an employment release with her share of the mediation cost being consideration."
10. A Final Compromise Settlement Agreement and Release was prepared shortly after the mediation conference, but was first presented to plaintiff for her signature in mid-December 2008. *Page 5 
Plaintiff refused to sign the Final Compromise Settlement Agreement and Release.
11. Although the evidence does not establish when the Final Compromise Settlement Agreement and Release reasonably would have been submitted to the Industrial Commission for review and approval had plaintiff signed it, it is clear from the evidence that it would not have been submitted until after mid-December, 2008.
12. Defendant filed a request to enforce the Mediated Settlement Agreement on January 19, 2009. An evidentiary hearing was held on defendant' motion to enforce the Mediated Settlement Agreement on March 12, 2009. At the hearing plaintiff was not represented by counsel as plaintiff's counsel had withdrawn.
13. Despite the language in the Mediated Settlement Agreement that "employee" would pay all unpaid medical expenses up to the date of the agreement, it appears from the evidence that the agreement negotiated at mediation was that self-insured defendant-employer's health insurance plan would be responsible for paying the unpaid medical expenses. Based upon her testimony, Ms. Kee's understanding was that all of her medical expenses related to the injury prior to and after mediation would be paid by defendant-employer's health insurance plan, including her copayments as long as she was still receiving medical treatment for her back injury. Despite plaintiff's misunderstanding, the Full Commission accepts as credible the testimony of plaintiff's former counsel that the agreement of the parties at mediation was that plaintiff's unpaid medical bill would be paid by defendant-employer's health insurance and that payment of her medical bills by defendant-employer's health insurance plan was a material part of the settlement agreement for plaintiff.
14. Following the mediation conference, defendant-employer's health insurance plan *Page 6 
did not pay plaintiff's unpaid medical expenses. Counsel for plaintiff and defendant continued to communicate concerning payment of plaintiff's unpaid medical expenses through the time the Final Compromise Settlement Agreement and Release was submitted to plaintiff for her signature. These unpaid medical expenses that plaintiff had incurred up to the date of mediation relating to her injury had not all been paid by the date of the March 12, 2009 hearing. Defendant's Human Resources Director could only testify that all bills had been "processed" by their insurer.
15. When defendant's attorney submitted the first draft of the Final Compromise Settlement Agreement and Release to plaintiff's attorney, the settlement agreement did not reflect that unpaid medical bills had been paid or would be paid through defendant's health insurance plan. Plaintiff's counsel did not agree that this settlement agreement reflected what was agreed upon at the mediation settlement conference and counsel for both parties tried to negotiate a resolution of the problem.
16. Defense counsel thereafter communicated with defendant-employer to obtain payment of medical bills from their health insurer as the parties had agreed. Trying to resolve payment of medical expenses delayed submission of the compromise settlement agreement to plaintiff for her agreement and signature.
17. Defendant-employer's Director of Human Resources who had the authorization to resolve workers' compensation claims was present at mediation and signed the Mediated Settlement Agreement. She was aware of the agreement that medical bills would be paid through defendant-employer's health insurance up to the date of the Mediated Settlement Agreement.
18. With respect to her agreement to resign from employment, plaintiff did not appear *Page 7 
to understand that resigning meant she would lose her health insurance. Plaintiff was extremely concerned when defendant's insurer, UMR, sent a notice to her on October 8, 2008 that her health insurance was terminated effective July 19, 2008 and that she was terminated from employment effective July 19, 2008. Plaintiff was given until December 5, 2008 to elect COBRA coverage, but she would have to make payments to cover the period beginning July 31, 2008 to qualify for continuing coverage. At the time she received this notice plaintiff was not financially able to pay for her own medical treatment or to purchase health insurance through COBRA and she was not aware that she was responsible for medical treatment for her injury.
19. Plaintiff was also extremely concerned and confused that her notice of termination indicated that her date of termination was July 19, 2008, as her leave from work during that period had been approved through FMLA. Defendant's Human Resources Director testified that the July 19, 2008 date was a computer input keying error as the actual date should have read September 19, 2008. The evidence does not show a correction of this error.
20. In reviewing a compromise settlement agreement, the Industrial Commission reviews all material medical reports known to exist up to the time the settlement agreement is submitted to the Industrial Commission for approval; therefore, all material medical reports for services rendered up to the time the settlement agreement is submitted to the Commission for approval is required to be submitted along with the settlement agreement.
21. Plaintiff saw Dr. Steven K. Gudeman on September 18, 2008, the day of mediation, and was referred for a 4th
(but different type) injection on November 26, 2008. She had an EMG on December 5, 2008 which showed evidence of L5 radiculopathy. Plaintiff continued to have significant low back pain radiating into her right lower extremities as of mid-December and through the date of the hearing herein. Had plaintiff signed the compromise *Page 8 
settlement agreement and the parties sent it to the Industrial Commission for approval, these post-mediation medical reports were material and would have been required to be submitted.
22. As of mid-December plaintiff had not been found to be at maximum medical improvement by her treating physician, Dr. Gudeman, and conservative treatment had failed to provide relief. She had experienced episodes of buttock and back pain that she reported as 7 out of 10 on the pain scale and had even been to the emergency room complaining of pain that was 10 out of 10 on the pain scale where 10 is the most severe pain. It is unclear from the record when plaintiff first had discussions about surgery but there is a medical note dated January 21, 2009 where Dr. Gore notes that plaintiff was planning on proceeding with surgery with Dr. Gudeman, which implies that surgery had already been discussed at some earlier time.
23. The "List of Medical Expenses Related to the Injury of 1/15/ 2008" which appears to have been submitted as an attachment to the Final Compromise Settlement Agreement and Release indicates that a number of bills were paid by workers compensation, which is inconsistent with this being a denied claim since the bills paid exceeded $10,000.00. A claim does not fit in the "medical only" category if medical expenses exceed $2,000.00. There were several bills exceeding a total $3,000.00 that were unpaid. These unpaid bills are the ones the parties to the Mediated Settlement Agreement agreed and expected to be paid by defendant-employer's health insurance plan.
24. The Final Compromise Settlement Agreement and Release that defendant is asking the Industrial Commission to enforce states, "The parties warrant and represent that there are no unpaid medical bills for treatment received by Plaintiff for her injury by accident and Employee-Plaintiff warrants that Defendants shall not be liable for payment of any unpaid medical bills or expenses past, present or future, in this case related to Employee-Plaintiff's *Page 9 
alleged injury by accident, the parties contemplating that the lump sum payment recited above contemplates that all medical expenses having already been paid." This statement is inconsistent with the attached list of medical expenses discussed above.
25 After conducting a full investigation the Full Commission finds as fact that the Final Compromise Settlement Agreement and Release is not fair and just and in the best interests of all parties and should not be approved. Even though this is a denied claim, it is not the more favorable remedy for plaintiff. The Full Commission further finds that there is a reasonable probability that plaintiff will prevail on her claim for compensation if it goes to hearing on compensability. There is no dispute concerning how and when the injury occurred. Also, at the time this case was mediated, plaintiff had not reached maximum medical improvement and was still receiving treatment for her back condition, including physical therapy and injections. Her symptoms had persisted over a period of approximately nine months. Plaintiff had an appointment with her neurosurgeon on the day of mediation, which caused her to be in a rush toward the end of the mediation conference. The medical records through the middle of December 2008, the earliest date the compromise settlement agreement could have been sent to the Industrial Commission for approval, showed that plaintiff's condition was not responding to conservative treatment and she was still complaining of back and buttock pain with radiculopathy. She was still being treated by Dr. Gudeman, a neurosurgeon, and her medical bills were mounting as she was still undergoing physical therapy and had received a nerve root block injection and EMG tests since the date of mediation. As of the date of mediation and continuing plaintiff was not able to return to her pre-injury job duties as a CNA and her work restrictions made it likely that she would have diminished wage-earning capacity, considering her education, training and past work history. Although the settlement offer as of the date of *Page 10 
mediation exceeded the total amount of temporary total disability plaintiff would have been entitled to receive, plaintiff's medical costs since the date of injury had already exceeded $16,000.00 and she was still incurring similar costs for treatment. Most of these medical bills had been paid before mediation through either workers' compensation or plaintiff's health insurance through defendant-employer's health insurance plan, but not all. The unpaid medical expenses, which were a material part of the agreement the parties reached at mediation and which plaintiff and defendant expected and agreed would be paid by defendant-employer's health insurance plan, had not been paid as of the middle of December 2008 when the compromise settlement agreement could have first been submitted to the Industrial Commission for approval had plaintiff signed it. These medical bills still had not been paid as of the date of hearing, which was almost six months after mediation. A hearing on the merits of this case is in the best interest of plaintiff.
26. The Final Compromise Settlement Agreement and Release should not be approved because it does not meet the requirements of Industrial Commission Rule 502 (2)(e), which requires compromise settlement agreements to contain the following language or its equivalent which the Full Commission has not waived: "That no rights other than those arising under the provisions of the Workers' Compensation Act are compromised or released." This statement could not in good faith be included in the Final Compromise Settlement Agreement and Release because "rights other than those arising under the provisions of the Workers' Compensation Act" were compromised and released in this settlement agreement as clearly documented in the Mediated Settlement Agreement. The Mediated Settlement Agreement and the other evidence of record establish that plaintiff's settlement agreement was conditioned upon her resigning and releasing other employment rights. Not only was plaintiff required to resign *Page 11 
and release employment rights, these conditions of the settlement went into effect immediately and remained effective even if the subsequent Final Compromise Settlement Agreement and Release was not approved. The practical effect of this Mediated Settlement Agreement is that plaintiff went into mediation with a job, health insurance and various employment rights. She left mediation with no job, no health insurance, no employment rights and no immediate or certain settlement money as she had no assurance that her compromise settlement agreement would be approved by the Industrial Commission, even if she had signed it when it was presented to her for execution three months later. The Full Commission is not waiving this Rule requirement.
27. The settlement agreement was not submitted to the Commission within a reasonable time as required by Industrial Commission Rule 502(4). Not finalizing the Final Compromise Settlement Agreement and Release for three months was an unreasonable time period and plaintiff was adversely impacted, as she had no job, no health insurance, mounting medical bills and no income.
28. In addition to finding that the Final Compromise Settlement Agreement and Release is not fair and just and in the best interests of all parties, the Full Commission further finds that the Mediated Settlement Agreement is not enforceable as a compromise settlement agreement because it does not meet the requirements of Industrial Commission Rule 502(2)(e) as "rights other than those arising under the provisions of the Workers' Compensation Act" were compromised and released in this settlement agreement. The language contained in and constituting a part of the Mediated Settlement Agreement itself that, "E-? (Employee-plaintiff) will resign and execute an employment release with her share of the mediation cost being consideration" shows that "rights other than those arising under the provisions of the Workers' *Page 12 
Compensation Act" were compromised and released in this settlement agreement. The Full Commission is not waiving this Rule requirement.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. N.C. Gen. Stat. § 97-17 states:
 "The Commission shall not approve a settlement agreement under this section, unless all of the following conditions are satisfied:
 (1) The settlement agreement is deemed by the Commission to be fair and just, and that the interests of all of the parties and of any person, including a health benefit plan that paid medical expenses of the employee have been considered.". . .
The conclusion that a settlement agreement is fair and just must come after a full review of the medical records filed with the agreement submitted to the Industrial Commission and only if the agreement allows the injured employee to receive the most favorable disability benefits to which he is entitled. N.C. Gen. Stat. § 97-17(b)(1), Lewis v. Craven Reg'l Med.Ctr., 134 N.C.App. 438, 441, 518 S.E.2d 1, 3 (1999), aff'd percuriam, 352 N.C. 668, 535 S.E.2d 33 (2000). The fact that an employee voluntarily agreed to the terms of a settlement or that the claim is a denied claim does not relieve the Industrial Commission of its statutory duty to determine if an agreement is fair and just and in the best interests of all parties.
2. "At the hearing on a motion to set aside the agreement, the Commission must determine the fairness and justness of the agreement from the medical evidence filed with the agreement at the time it was originally submitted to the Commission for approval."Lewis v. Craven Regional Medical Center, 134 N.C. App. 438,441, 518 S.E.2d 1,4, (1999)). The same *Page 13 
requirement would appear to apply on a motion to enforce a settlement agreement. Defendant would not have submitted the Compromise Settlement Agreement herein to the Industrial Commission for approval before the middle of December 2008 because if was not finalized until that time and they did not actually move to enforce the agreement until January 19, 2009. The Full Commission concludes that it should review the Final Compromise Settlement Agreement and Release herein based upon medical records in existence in mid-December 2008, although arguably the time could be construed to extend to the date the motion to enforce the settlement agreement was filed. Id.
3. The greater weight of the competent and credible evidence of record establishes that the compromise settlement agreement that is the subject of this claim is not fair and just and in the best interests of all of the parties and should not be approved. N.C. Gen. Stat. § 97-17. The evidence establishes and the Full Commission has found as fact herein that the settlement agreement is not fair and just and in the best interests of all of the parties for a number of reasons, including the following. There is a reasonable probability that plaintiff will prevail on her claim for compensation if it goes to hearing on compensability as there is no dispute concerning how and when the injury occurred. At the time this case was mediated, plaintiff had not reached maximum medical improvement and was still receiving treatment for her back condition, including physical therapy and injections. Her symptoms had persisted over a period of approximately nine months. Plaintiff had an appointment with her neurosurgeon on the day of mediation for ongoing symptoms since the date of injury. The medical records through the middle of December 2008, the earliest date the compromise settlement agreement could have been sent to the Industrial Commission for approval, showed that plaintiff's condition was not responding to conservative treatment, she was still complaining of back and buttock pain with *Page 14 
radiculopathy, she was still being treated by Dr. Gudeman, a neurosurgeon, and her medical bills were mounting as she was still undergoing physical therapy and had received a nerve root block injection and EMG tests since the date of mediation. As of the date of mediation and continuing plaintiff was not able to return to her pre-injury job duties as a CNA and her work restrictions made it likely that she would have diminished wage-earning capacity, considering her education, training and past work history. Although the settlement offer as of the date of mediation exceeded the total amount of temporary total disability plaintiff would have been entitled to receive, plaintiff's medical costs since the date of injury had already exceeded $16,000.00 and she was still incurring similar costs for treatment. Although most of her medical bills had been paid through either workers' compensation or plaintiff's health insurance through defendant-employer, she still had unpaid medical bills exceeding $3,000.00 at the time of mediation. Payment of the unpaid medical expenses was a material part of the agreement that the parties reached at mediation. Both plaintiff and defendant relied on the agreement and expectation that plaintiff's unpaid medical bills would be paid by defendant-employer's health insurance plan. These unpaid medical expenses had not been paid as of the middle of December 2008 when the compromise settlement agreement would have been submitted to the Industrial Commission for approval had plaintiff signed it, and they had not been paid as of the date of hearing which was almost six months after mediation. Id.
4. The compromise settlement agreement herein should not be approved because it does not meet the requirements of Industrial Commission Rule 502(2)(e), which provides that no compromise agreement shall be approved unless it contains the following language or its equivalent: "That no rights other than those arising under the provisions of the Workers' Compensation Act are compromised or released." This language was not included in the *Page 15 
compromise settlement agreement and the Commission has not waived this requirement. "Rights other than those arising under the provisions of the Workers' Compensation Act" were compromised and released in this settlement agreement as clearly documented in the Mediated Settlement Agreement. The Mediated Settlement Agreement and the evidence establish that plaintiff's settlement agreement was conditioned upon her resigning and releasing other employment rights. Not only was plaintiff required to resign and release employment rights, these conditions of the settlement went into effect immediately and remained effective even if the final compromise settlement agreement was not approved. North Carolina Industrial Commission Rule 502.
5. The Industrial Commission has the power to construe and apply rules it adopts to carry out the purposes of the Workers' Compensation Act, the construction and application of which ordinarily are final and conclusive and not subject to review by the courts on appeal from an award made by the Commission.Chaisson v. Red Simpson, No. COA08-704, 673 S.E.2d 149,158 (2009), citing Winslow v.Carolina Conf. Ass'n,211 N.C. 571, 579, 191 S.E. 403, 408 (1937).
6. A Mediated Settlement Agreement that fully complies with Rule 502(2) of the Workers' Compensation Rules constitutes a valid compromise settlement agreement, subject to approval by the Industrial Commission, pursuant to Rule 502(1) of the Industrial Commission Rules. Lemly v. Colvard Oil Company,157 N.C. App. 99, 577 S.E.2d 712 (2003). Where a valid Mediated Settlement Agreement exists, the Industrial Commission may, in its discretion, approve the agreement if it is found to be fair and just and in the best interests of all the parties. N.C. Gen. Stat. § 97-17(b)(1); North Carolina Industrial Commission Rule 502. The Mediated Settlement Agreement herein does not comply with Rule 502(2) of the Workers' Compensation *Page 16 
Rules and is not enforceable as a compromise settlement agreement. The Industrial Commission has no jurisdiction over agreements made at mediation that are outside the provisions of the Workers' Compensation Act; however, the Industrial Commission does have jurisdiction over Mediated Settlement Agreements. Since Industrial Commission Rule 502(2)(e) prohibits a compromise settlement agreement from releasing or compromising rights other than those arising under the Workers' Compensation Act, that prohibition applies equally to the actual Mediated Settlement Agreement which could be enforceable as a compromise settlement agreement. North Carolina Industrial Commission Rule 502.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 *********** AWARD
1. The Final Compromise Settlement Agreement and Release herein is not fair and just and in the best interests of all parties and is therefore disapproved.
2. Defendant's motion to enforce the Mediated Settlement Agreement herein as a compromise settlement agreement is denied.
3. Defendant shall pay the costs of this action.
4. IT IS ORDERED that this case is remanded to Chief Deputy Commissioner Wanda Blanche Taylor for assignment for a hearing on the merits of this claim on plaintiff's Form 33 request for hearing.
This the ___ day of April 2010. *Page 17 
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
DISSENTING:
 S/___________________ STACI T. MEYER COMMISSIONER *Page 18